IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CITY OF LANCASTER,** : | Case No. 2:10-CV-1041 |
| **Plaintiff,** : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | MAGISTRATE JUDGE DEAVERS |
| **FLAGSTAR BANK, FSB, et al.,** : | |
| **Defendants.** : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the court on Plantiff/Counterclaim Defendant the City of Lancaster's Motion to Dismiss (Dkt. 9) and Motion for Judgment on the Pleadings (Dkt. 14). The City moves to dismiss Counts I and II of Flagstar Bank, FSB's Counterclaim for failure to state a claim upon which relief may be granted. The City moves for judgment on the pleadings as to Count I of the Complaint and Count III of the Counterclaim. For the following reasons, the City's Motion to Dismiss is **GRANTED**, and its Motion for Judgment on the Pleadings is **GRANTED** in part and **DENIED** in part.

**II. BACKGROUND**

Plaintiff/Counterclaim Defendant the City of Lancaster is a municipality in the state of Ohio. Defendant Flagstar Bank, FSB, is a Michigan entity whose principal place of business is located in Troy, Michigan. Defendant Island Capital is a Michigan limited liability company that is in the business of acquiring and developing commercial real estate. Flagstar Bank is the assignee of the claims of Island Capital.

1

## A.  The Tax Increment Financing Agreement

Tax Increment Financing ("TIF") is a method of financing used to pay for public improvements.  A city will "float" (i.e., sell) bonds for public improvements, with the intent to recoup the money from increases in the value of property positively impacted by those public improvements.  The property owners make service payments to a fund in lieu of property taxes, and the city pays the bond obligations with the money from this fund, rather than with the public city's general revenue fund.  The service payments are commonly used to pay either the direct costs of necessary infrastructure improvements or to pay the debt service charges on bonds or notes issues to finance these improvements.

In September 2006, the Lancaster City Council unanimously passed an ordinance to encourage and assist the development of several commercial retail shopping centers located in the City of Lancaster.  To accomplish this goal, City Council authorized the City to enter into a TIF Agreement with several developers who were planning to develop targeted properties in the City, including Island Capital, Menard, Inc., Wal-Mart Stores East, LP, TLG Lancaster Ltd., GCG Lancaster Ltd., and Anchor Lancaster LLC (collectively referred to as the "Current Owners").

Pursuant to the Agreement, the City agreed to issue bonds or notes (the "Debt") in an amount not to exceed $3.6 million to pay the "Costs of Public Improvements" for the proposed developments.  In lieu of paying real property taxes on improvements to be made to the target properties, each of the Current Owners, including Island Capital, agreed to make semiannual Debt service payments (the "Service Payments") in connection to their respective properties. TIF Agreement § 3.1(a).

To provide security for the Service Payments, the Current Owners, including Island Capital, were required to provide a letter of credit ("LOC") prior to the issuance of the debt, in a form satisfactory to the City.[1]  TIF Agreement §§ 1.1, 3.5(a).  The TIF Agreement required that the LOCs were to be "issued by an institution having unsecured, uninsured and unguaranteed long-term debt rating 'A2' or higher by Moody's Investors Service or 'A' or higher by Standard & Poor's Rating Service.  TIF Agreement §§ 1.1, 3.5(a).

The Agreement also provided that "at least 15 days prior to the expiration of any Letter of Credit," the Current Owner "must provide another Letter of Credit with a maturity date of not less than one year from the date of its issuance or the next succeeding payment of principal and interest on the Debt following the expiration date of the Letter of Credit, whichever is later." TIF Agreement § 3.5(c).  If a Current Owner does not comply with § 3.5(c) and provide a LOC at least 15 days prior to the expiration of the then existing LOC, "[t]he City shall draw on the Letter of Credit in the entire amount of that Letter of Credit."  TIF Agreement § 3.6(a).  The funds "shall be deposited in the TIF Fund and shall be used to pay Debt Service and for no other purpose."  TIF Agreement § 3.6(d).

### B.  Island Capital/Flagstar Letter of Credit

In compliance with the TIF Agreement, on or about October 6, 2006, Island Capital

---

[1] A letter of credit is an undertaking by a bank (in this case, Flagstar) on behalf of one of its customers, known as the applicant (in this case, Island Capital), to honor demands for payments by a beneficiary (in this case, the City) upon the occurrence of certain conditions specified in the letter of credit.
    A "standby" letter of credit is a specific type of LOC, which acts as a "back-up" against applicant default.  The default of the applicant triggers the issuer's obligation to pay the beneficiary.

obtained an irrevocable standby LOC from Flagstar Bank and in favor of the City in the amount of $1,084,320.00. The LOC had a final expiration date of October 3, 2009. In September 2007, Island Capital requested that the City reduce the amount of the LOC required of them by the TIF Agreement. Representing that it was "pleased with the development progress achieved to date . . . and with Island Capital's continued commitment to development," on November 20, 2007, the City entered into a letter agreement with Island Capital to reduce the required letter of credit amount by 50% upon certain conditions. Although Island Capital did not obtain a new or amended letter of credit, it agreed to the terms and conditions in the letter agreement.

Pursuant to § 3.6(a), Island Capital was to provide a replacement letter of credit to the City by September 18, 2009, which was 15 days before the date of expiration of the initial LOC. That date passed, and Island Capital had failed to provide a replacement LOC to the City. On October 1, 2009, the City learned that Flagstar Bank had been the subject of an adverse rating action and its credit rating had been downgraded as a result.

Accordingly, on October 1, 2009, the City sent a letter to Flagstar Bank demanding payment of the full amount of the LOC. In support of its demand the City stated that: (1) it had not received the replacement letter of credit by the required deadline; and (2) given Flagstar Bank's downgrade, "any extension or renewal [with Flagstar as issuer] would not be compliant with the terms of the TIF Agreement." The City did not provide Flagstar with any prior notice.

On or about October 6, 2009, Flagstar Bank wired the full amount of the Flagstar LOC to the City's account. The City asserts that on the same day, it issued a note in favor of Island Capital in the amount of $542,160.00, plus interest from the date of the drawing on the Flagstar LOC. This note reflected Island Capital's interest in any funds that may remain following

4

application of the proceeds of the LOC to Island Capital's obligations under the TIF Agreement. Likewise, the City subsequently agreed to reduce Island Capital's obligation by 50%, returning $542,160.00 to Flagstar Bank and retaining $542,160.00 in an escrow account for application pursuant to the terms and conditions of the TIF Agreement.  By contrast, Flagstar asserts that the City only returned the sum of $454,160.00 to the bank, and retained $18,000.00 for certain legal expenses and $70,000.00 to be held in a separate escrow fund specifically to secure payment of Taxes or Service Payments of Island Capital.

### C.  The Replacement Letter of Credit

On November 2, 2010, more than one year after the expiration of the initial LOC, Flagstar Bank presented a replacement LOC to the City on behalf of Island Capital.  The Bank requested that the City return the remaining $542,160.00 in exchange for the replacement LOC. The City refused to accept the LOC or return the $542,160.00.  Flagstar threatened the City with litigation if it failed to comply with its demand.

### D.  Procedural Background

On November 4, 2010, the City filed a Complaint in the Fairfield County Court of Common Pleas against Flagstar Bank and Island Capital seeking a declaration that it validly exercised its rights by drawing on the Flagstar LOC and retaining the proceeds.  On November 18, 2010, the Bank and Island Capital removed the case to this Court based on diversity of citizenship.  Thereafter, the Bank answered the complaint and filed a counterclaim.  The matter is currently before the Court on the City's Motion to Dismiss Counts I and II of the Counterclaim pursuant to 12(b)(6), and the City's Motion for Judgment on the Pleadings as to Count I of the Complaint and Count III of the Counterclaim pursuant to FRCP 12(c).  The

motions are fully briefed and ripe for decision.

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6).

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) attacks the sufficiency of the pleadings and is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt.*, 249 F.3d 509, 511-12 (6th Cir. 2001). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Gp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008)

(quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 127 S. Ct. at 1964. A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S at 556). A Rule 12(c) motion is granted only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*, 395 F. Supp. 2d 644, 649 (S.D. Ohio 2004).

## IV. LAW AND ANALYSIS

### A. MOTION TO DISMISS

The City moves to dismiss Counts I and II of the Bank's Counterclaim.

#### 1. Count I of the Counterclaim: Breach of Contract

In Count I, Flagstar Bank alleges breach of contract. According to the counterclaim, pursuant to the TIF Agreement the City was obligated to provide written notice and an opportunity to cure regarding any failure to observe or perform any agreement or obligation under the TIF agreement. In addition, the City was obligated to act in good faith and to cooperate and use its best efforts to perform timely all its obligations pursuant to the TIF agreement. FSB alleges that the City breached its obligations by failing to provide Island Capital with either sufficient notice or an opportunity to cure the alleged default before drawing on the Flagstar Letter of Credit on October 1, 2009, and by refusing to accept the Replacement Letter of

7

Credit.

In order to make out a claim for breach of contract, a plaintiff must show that: (1) a contract existed; (2) the plaintiff performed; (3) the defendant breached; and (4) the plaintiff suffered damages. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (interpreting Ohio law); *Nat'l City Bank of Cleveland v. Erskine & Sons*, 110 N.E.2d 598, 603 (Ohio 1953); *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 957 (Ohio Ct. App. 2004). It is undisputed that the TIF Agreement is a valid contract. The issue is whether there was a breach. Flagstar argues that the City breached the TIF Agreement in two ways: (1) it did not provide the bank with written notice of the breach and 30 days to cure; and (2) it did not accept the replacement letter of credit provided in November 2010.

### a. Notice or Cure

First, Flagstar argues that it should have been given written notice and 30 days to cure before the City drew on the Flagstar LOC. The LOC was to expire on October 3, 2009. On September 18, 2009, fifteen days before the expiration, Island Capital had not yet provided the City with a new LOC as required by § 3.5(c) of the TIF Agreement. Flagstar concedes that this is a default or breach. It goes on to argue, however, that the City breached the contract by failing to give Island Capital written notice of this breach and thirty days to cure, as required by § 6.1(a).[1]

---

[1] Section 6.1(a) provides: Except as otherwise provided in this Agreement, in the event of default in or breach of this Agreement, or any of its terms or conditions, the City or the applicable Current Owner shall, upon written notice from any of the others, proceed promptly to cure or remedy such default or breach. In case such remedial action is not taken or not diligently pursued within thirty (30) days of such written notice, the entity asserting default or breach may institute such proceedings at law or in equity, and in the case of a claim against the City, if appropriate, an action in mandamus, as may be necessary or desirable in its opinion to remedy

8

Flagstar's reliance on § 6.1(a) is misplaced.  Under § 3.6(a), "[t]he City shall draw on a Letter of Credit in the entire amount of that Letter of Credit if the provider of that Letter of Credit has not provided a new Letter of Credit pursuant to Section 3.5(c) at least 15 days prior to the expiration of the then current Letter of Credit."  This more specific remedy for a breach of § 3.5(c) replaces the general requirement in § 6.1(a).  *Hedrick v. Spitzer Motor City, Inc.*, No. 89306, 2007 WL 4442689, at *2 (Ohio App. 8 Dist. December 20, 2007) (quoting *Mut. Life Ins. Co. v. Hill* 193 U.S. 551, 558 (1904) ("The ordinary rule in respect to the construction of contracts is this: that where there are two clauses in any respect conflicting, that which is specially directed to a particular matter controls in respect thereto over one which is general in its terms, although within its general terms the particular may be included.  Because, when the parties express themselves in reference to a particular matter, the attention is directed to that, and it must be assumed that it expresses their intent; whereas a reference to some general matter, within which the particular may be included, does not necessarily indicate that the parties had the particular matter in thought.")).

Further, enforcement of the more general § 6.1(a) requirement for breaches of § 3.5(a) would lead to absurd results and render § 3.6(a) meaningless.  § 3.5(a) required Island Capital to provide a replacement LOC to the City 15 days before the older LOC expired.  If Island Capital breached this obligation, and was given 30 days to cure, the LOC would expire and the city would have no right to draw on the LOC.  The City would not have any security for Island Capital's debt service obligations and the burden would shift to other Current Owners and to the City's taxpayers.  Additionally, this 30 day requirement of § 6.1(a) would render the 15 day

---

such default or breach.

9

requirement of § 3.6(a) meaningless because it would eliminate the ability of the City to take advantage of this provision. As it is a general principle of contract law that all provisions of a contract should be given meaning, the City acted in accordance with the TIF Agreement when it drew on the LOC pursuant to § 3.5(a). *See Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) (quoting *Farmers Natl. Bank v. Delaware Ins. Co.*, 94 N.E. 834 (Ohio 1911) ("In the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain.")).

### b. Replacement Letter of Credit

Second, Flagstar argues that the City has breached the TIF agreement by failing to accept the replacement LOC presented more than one year after the expiration of the LOC. Flagstar argues that Island Capital has a continuing obligation to provide a letter of credit, and thus the City has a continuing obligation to accept it if it was in a satisfactory form.

The language of the TIF Agreement does not support this interpretation, however, because there is no provision that requires the City to accept a replacement LOC or that creates a continuing obligation. According to the TIF Agreement, Current Owners (such as Island Capital) are required to provide LOCs "prior to the issuance of Debt" and then "at least 15 days prior to the expiration of the then current Letter of Credit." §§ 3.5(a) and 3.6(a). If Island Capital fails to meet these requirements, it has breached the contract. From this set of requirements, and absent an express provision to the contrary, it would be illogical to infer that

Island Capital has more than one year to provide a replacement LOC once the current LOC has expired or once the City has drawn on the LOC.  *See Leigh v. Crescent Square Ltd.*, 608 N.E.2d 1166, 1168 (Ohio App. 2 Dist. 1992) ("It is widely held that courts may not imply additional terms in a contract or agreement where none clearly exists.").

Finally, Flagstar argues that the replacement LOC is substitute performance that will put the City in the exact same position as contemplated by the TIF Agreement.  Substitute performance applies when a party cannot perform due to impracticability.  Restatement (Second) of Contracts § 270.  Flagstar does not allege that it needed more than a year to provide a replacement LOC because of impracticability, and thus this doctrine does not apply.

Even accepting all of Flagstar Bank's factual assertions as true, Flagstar has not established a claim upon which relief can be granted.  The interpretation of the contract is a matter of law, and it is clear that the City acted in accordance with the TIF Agreement's terms when it drew on the LOC without providing notice and refused to accept the replacement LOC more than one year after the expiration of the prior LOC.  Accordingly, the City's motion to dismiss Count I of the Counterclaim for failure to state a cause of action upon which relief can be granted is **GRANTED.**

### 2. Count II of the Counterclaim: Declaratory Judgment

In Count II, Flagstar requests a declaratory judgment.  The Bank alleges that, when Island Capital submitted the replacement letter in November 2010, it did so pursuant to its continuing obligation to supply a letter of credit to secure its payment obligations.  As a consequence, the City has a corresponding obligation to accept a letter of credit that meets the requirements and definitions found in the TIF agreement.  The Bank asserts that there is no basis

under the TIF Agreement for the City to retain proceeds drawn from the Flagstar Letter of Credit pursuant to § 3.6(a) while Island Capital is, at the same time, required to provide a letter of credit. The City's failure to accept the Replacement Letter of Credit deprives Island Capital of certain contractually bargained-for benefits under the TIF Agreement, including its opportunity to extinguish its LOC requirement. Thus, in the alternative to the monetary judgment requested in Count I, Flagstar Bank requests declaratory relief that the City must accept the Replacement Letter of Credit and return to Flagstar Bank the remaining $542,160.00 that was drawn on the Flagstar Letter of Credit pursuant to § 3.6(a) of the TIF Agreement.

Under the Agreement, Island Capital did not have a continuing obligation to provide a LOC to the City. Island Capital provided the City with a LOC pursuant to § 3.5(a). It defaulted, and the City drew on the LOC as permitted under § 3.6(a). As the City has already drawn on the LOC, no further action is required. There is no provision in the TIF Agreement that the City is obligated to exchange the proceeds from the LOC for a replacement letter. Thus, a declaratory judgment requiring this action would be inappropriate.

Even accepting all of Flagstar Bank's factual assertions as true, it has not established a claim upon which relief can be granted. The interpretation of the contract is a matter of law, and it is clear that the City acted in accordance with the TIF Agreement's terms. Accordingly, the City's motion to dismiss Count II of the Counterclaim for failure to state a cause of action upon which relief can be granted is **GRANTED.**

### B. MOTION FOR JUDGMENT ON THE PLEADINGS

The City moves for judgment on the pleadings as to Count I of its Complaint and Count III of the Bank's Counterclaim.

**1. Count I of the Complaint: Declaratory Judgment**

In Count I, the City requests a declaratory judgment that it has an absolute right to retain the proceeds of the Island LOC, and to apply the proceeds of the LOC in accordance with the terms of the TIF Agreement.  As discussed above, the City argues that the plain language of § 3.6(a) entitled it to draw upon the LOC when Island Capital defaulted.  Under § 3.6(d), any amount drawn on the LOC shall be: (1) deposited in the TIF fund; and (2) used to pay Debt Service and for no other purpose.[2]  As it is undisputed that Island Capital defaulted or breached its obligations to supply a new LOC to the City, the City argues that it is entitled to a declaratory judgment that it may retain the funds pursuant to § 3.6(a) and apply them to the Debt when payments are due in accordance with § 3.6(d).

Although the City asserts that this is a matter of law that is appropriate for judgment on the pleadings, the Bank asserts that there are several factual issues that need to be addressed.  First, the Bank argues that there are factual issues surrounding whether the City waived strict compliance with § 3.5(c) for Island Capital.  It bases this allegation on an email exchange between Island Capital and the City, which is not a part of the pleadings.  As such, this Court cannot consider these emails on a Rule 12(c) motion.  *W. Energy Ptnrs., LLC v. New Energy Co.*, No. 2:20-cv-7025, 2007 WL 397066, *3 (S.D. Ohio January 31, 2007) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997) (matters outside the pleadings cannot be considered in deciding a motion for judgment on the pleadings)).

---

[2] "Debt Service" is defined in the TIF Agreement as: "the principal and interest to be paid on the Debt when due."  "Debt" is defined as: "any bonds, notes or other obligations of the City issued, or issued to retire prior Debt issued."  TIF Agreement § 1.1.

13

Furthermore, even in the Court did consider the emails, there was not a waiver. First, waiver of a contractual term requires proof of a "clear, unequivocal, decisive act of the party against whom the waiver [is] asserted." *White Co. v. Canton Transp. Co.*, 2 N.E.2d. 501, 505 (Ohio 1936); *Monreal Funeral Home, Inc. v. Ohio Farmers Ins. Co.*, 937 N.E.2d 159, 164 (Ohio Ct. App. 2010). There is nothing in the emails that meets this standard. Second, § 6.3 states:

> No failure by the City . . . to insist upon strict observance or performance by the others of any covenant, agreement or obligation under this Agreement and no failure to exercise any right, remedy or power consequent upon a breach thereof, shall constitute a waiver of any right to strict observance or performance or a waiver of any breach.

This language bars the Bank's contention that the email exchange regarding a replacement LOC constitutes breach.

Second, the Bank argues that there are factual issues as to whether the City's right to draw on the Flagstar LOC pursuant to § 3.6(a) was actually triggered when Island Capital defaulted pursuant to § 3.5(a). This default is not disputed, nor is the appropriate remedy for the breach. As discussed above, § 3.6(a) is the correct remedy.

Third, the Bank argues that the propriety of the City's draw of the entire $1,084,320.00 is in question. As described above, in November 2007, the City and Island Capital agreed to reduce the amount of the LOC by 50%. The parties agreed to a Reduction Letter Agreement, but Island Capital did not provide a replaced LOC with the reduced value on which the City could have drawn. When the City did draw on the LOC, it returned half of the initial proceeds to the Bank. The Bank argues that consideration of this extrinsic evidence is necessary to determine the appropriateness of the draw on the LOC. As discussed above, the plain language of the TIF

14

Agreement allowed the City to draw on the entire LOC.

As none of these factual issues is actually in dispute based on the plain language of the TIF Agreement, judgment on the pleadings is appropriate.  The City acted in accordance with the Agreement when it drew on the LOC.  It has the right to retain the proceeds and apply them in accordance with the terms of the TIF Agreement.  Accordingly, the City's Motion for Judgment on the Pleadings as to Count I of the Complaint is **GRANTED**.

## 2. Count III of the Counterclaim: Declaratory Judgment

The final issue is how the City may apply the proceeds of the LOC in accordance with the TIF Agreement.  In Count III, the Bank seeks a declaratory judgment that the City may only use the remaining funds from the draw on the Flagstar LOC to make Debt Service payments that are in proportion to Island Capital's portion of the Debt and only in the event that Island Capital fails to make timely service payments.  Under § 3.6(d) of the TIF Agreement: "All amounts drawn on any Letter of Credit pursuant to § 3.6(a) and (b) shall be deposited in the TIF Fund and shall be used to pay Debt Service and for no other purpose."  The Bank argues that other provisions of the TIF Agreement make clear that if the City draws upon a Current Owner's LOC, or requires a project shortfall payment from a Current Owner, the draw is to be proportional to the Current Owner's percentage of the Debt.  Nothing in the TIF Agreement authorizes the City to use the proceeds of any draw on a Current Owner's LOC to make payments that exceed this proportional share, or to make payments when the Current Owner is otherwise current in its payment obligations.  The Bank, upon information and belief, asserts that the City plans to use the funds from the Flagstar LOC to pay Debt Service without any regard to Island Capital's percentage of the debt.

The City retorts that this interpretation is in direct conflict with the plain language of § 3.6(d) because this section's reference to "Debt Service" encompasses the City's total obligation for the entire project.  According to the City, there is no textual support for Flagstar's contrary contention that the proceeds must be applied proportionally in the TIF Agreement.  Nevertheless, the language could support either interpretation.  Accordingly, this is not a question of law that is appropriate for judgment on the pleadings, and the City's motion as to Count III is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss is **GRANTED** and its Motion for Judgment on the Pleadings is **GRANTED** as to Count I of the Complaint and **DENIED** as to Count III of the Counterclaim.

**IT IS SO ORDERED.**

                  s/Algenon L. Marbley
                **ALGENON L. MARBLEY**
                **UNITED STATES DISTRICT JUDGE**

**DATED: June 6, 2011**